We've switched the order of the calendar, and we will first hear in Claiborne v. Roscoe B. K. Restaurant. Counsel? I may please the court. Thomas Ogden on behalf of Appellant William Graven, who's sitting over my left shoulder. Your Honor, I would like to take my time to rebut the positions in my colleague Mr. Kozinets' brief, where he's saying that Mr. Graven's claim on this Section 229 is purely in the furtherance of the second part that we identify in our brief. We read the statute as having two clauses, and we make the point in our brief that the second clause is a discretionary duty on the part of the President to do a mandatory act. So we say that... What does that mean, a discretionary duty to do a mandatory act? Well, when I read the cases which were briefed in the opening brief, it seems that sometimes these statutes say that the executive has to do something, but then there's language, though, as may be proper, and it's been interpreted to say that, okay, there's a discretionary duty, a mandatory duty to act, but we have to give a little leeway to the executive to have a little discretion on how to go about doing it. Is that your interpretation of the second clause here? That's how we're reading it, and we're making the point that the way I read Mr. Graven's complaint is that he stated a claim under the first clause, which looks a little bit more...it looks tighter in terms of a mandatory duty. You make an application to the executive, and then the executive has to go... Counsel, help me with this. Do you agree that in a mandamus action, if there's discretion, a mandamus does not lie? Is that correct? If there's a discretionary duty, a mandamus doesn't lie, yes. Okay. So in 229, in the relevant part, it indicates that the executives shall take, and quote, such further steps may be taken as shall be proper in the opinion of the president to obtain satisfaction for the inquiry. The word may suggest discretion, does it not? Yes, Your Honor, absolutely. So if that's the case, and you're relying on 229, doesn't that defeat a request for mandamus? Well, no, no, no. It suggests he has to do something. The may? Well, the may be taken as shall be proper, but the first part is he shall go negotiate on behalf of my client upon application. But you agree that 229 is a whole. I mean, you don't just cherry pick a part of it, right? The duty, if any, arises out of 229 as a whole. Isn't that correct? Well, we don't have a case law on whether... And I would point this out because it's interesting because most of the case law that we do have is single clause type scenario, but this is split. So I can't find anything that says somehow it splits and that one influences the other in terms of what the... Well, let's just say arguendo. Oh, arguendo. If it is of a piece and this is part of it, then you have at least a portion of what you're talking about that is discretionary with the president. He may do it, can have to do it, but he may do it. That means mandamus doesn't lie, correct? Arguendo, of course. Arguendo if that was just the clause, yes. If that was just 229, if that purely then it's a strong request. Are you relying on something besides 229 for your relief? I'm relying on the first, the plain language of the first part of 229, which says he has to do something. And I'm saying that the way it's pled in Mr. Graven's complaint is he stated essentially, and rather I can see verbose form, that he made a request in November 2009 and nothing's happened. The BIA, the citation to that would be 286 on the record. I'd also like to address that. Before we get to that, let me ask you about one other thing. You have to show that there's no other adequate remedy that's available. If I understand it correctly, you have, you didn't exhaust your claim before the Board of Indian Appeals. You have another action pending. Let's see here. I know where you're going, Your Honor. I can address those points. Okay, go ahead. On the exhaustion point, we're done with the statute that there's no guidance on who you go to make these initial applications to. Now, Mr. Graven, he had pending before the IBIA an inaction, a request for inaction. But you read the complaint at 286. Had that been successful, would that have taken care of your problem? Well, I believe, what I believe, Your Honor, is he alleged that he did exhaust because on March 7th, he then, when he was getting no action even from the IBI, he went to Mr. Echo Hawk, who's the Assistant Secretary. The IBIA then came back and said, we don't have jurisdiction over him. That's March 7th, 2011. It's in the record at 1516. And he alleges it at 287. So who do you go to? He even alleges in his complaint, I don't know which defendant to go to because we are concealing. Did he try the tribal court? He did try the tribal court. And they're saying that that was an alternative remedy. But if you look at actually in their motion for judicial notice, the reason he got kicked out of tribal court is he had no standing. They're saying, you have no remedy to begin with. So how can you say an alternative remedy in tribal court when he doesn't even have standing? How's the determination? It was in, it's on page 7 of the request for judicial notice, which is docket entry number 48-2. So I'm trying to understand how if we have a judicial determination where you don't have standing, how can you have an alternative remedy in the tribal court? So that's our response to that position on the exhaustion. A couple other points is they're stating that Mr. Graven had made application to the BIA back in 07. Now, we think what's going on in his opposition to their motion to dismiss, they latch on to a lot of statements he's making. Now, Mr. Graven in his complaint very clearly said that he has a lot of related actions. This wasn't just suddenly something happened. This was, there's a lot of back and forth going on in the underlying dispute in 07 especially. He says that in his complaint at 286 that those are my related actions. It seemed more of a tribunal type proceeding before the BIA. But in November 2009, that's when I invoked section 229. So if you look at a lot of language, he does in a way confuse the issues on all this action going on with the BIA and IBIA. But he expressly says in 286, I made a request. I waited. Nothing happened under 229. So that's our position on how they're trying to say it's moot because he already made application. I don't read the complaint that way. I think he stated very clearly when he made the 229 request. And that was after all these statements he made in his motion to dismiss where, you know, the BIA has made an application to the National Tribe in October 2007 and nothing happened in January 2008. I'm reading on 243 in the record. But if you look before that, he does mention, plaintiff does not know if the president or his appointed representative have given direction as mandated. But apparently not. He's implying there the section 229 request that he made in November 2009. So what's happening right now on the ground? I mean, can you tell me? I know it's not in the record. But is anybody operating this hangar? If my understanding of the facts is correct, the tribal, the tribe has gone in, evicted Mr. Graven, and has taken over that interest on the Memorial Airfield. It's a very valuable interest. This whole area, these allotments, my understanding of these allotments are if you go to Phoenix, which I may have been, that it's kind of like Camp Pendleton where suddenly there's just this land and there's a lot of development issues. And Mr. Graven was going to go in and organize the allottees and start. He's a serial entrepreneur, very successful. This absolutely destroyed him. But that was the intent of what was going on. And I gather that there's really, in your judgment, no possibility of settling with the tribe? That I don't know. I don't know. I didn't handle this case at the district court. I came out as appellate counsel to answer the specific question, I think. Perhaps maybe if the executive comes in and turns things up on the initial negotiations, maybe it does compel settlement. We'll make that point in the opening brief. Okay. Any further questions? Thank you. We'll give you some time for a moment. Thank you, Your Honor. Good morning, Your Honors.  I'm Peter Kozinets for the Department of Justice. The district court properly dismissed Mr. Graven's mandamus action because it was based on legal allegations that had no substance in Federal law. In order to obtain mandamus relief, Mr. Graven must show that his claim is clear and certain. And he's unable to do that here because the kind of relief he seeks is simply not authorized by 25 U.S.C. Section 229. Secondly, in order to obtain mandamus, he must show that he's seeking to enforce a ministerial nondiscretionary duty that is so plainly prescribed as to be free from any doubt, and he clearly has not done that here. Instead, he relies on a very open-ended part of the statute that may take further steps provision that is inherently open-ended and, as the U.S. v. Carlin court noted, makes no provision for what is to happen. Next. And finally, he has failed to show that he exhausted his available alternative remedies. Counsel, what steps were taken on his behalf pursuant to what his lawyer calls prong one, sort of the first part of the statute? Well, in 2007, when Mr. Graven received a notice of eviction, he went to the BIA and asked for help, and, in fact, the BIA sent representatives to several meetings with the tribe in September and October of 2007. And then later in October of 2007, the superintendent for the PEMA agency, which has authority in that area, sent a very detailed letter to the tribe regarding Mr. Graven's lease and asking them not to do anything further, but instead to negotiate. Mr. Graven admits in his response to the motion to dismiss filed below that those actions constituted an application to the tribe for relief under section 229. And I'm thinking specifically of page 6 of his response to the motion to dismiss. So what do you think his remedies are now? Well, Mr. Graven has administrative remedies, which he started to invoke at the time, or before the time when he filed his district court complaint below. And you don't think those are time-barred? I understand that they're still proceeding, Your Honor. Okay. And he also had an action against tribal officials and tribal members. He filed in the tribal community court. His action was dismissed, but he then appealed to the tribal court of appeals, and he abandoned that appeal subsequently. While those proceedings were pending, he also sued the tribal officials in federal court in a separate federal action. He sued 21 tribal members and officials on 42 different causes of action. And the federal district court dismissed that complaint for failure to exhaust administrative remedies. Mr. Graven ultimately appealed that decision to this court. Yes, but what specific remedies had he failed to exhaust in that particular claim, according to the district court? He had, according to the district court in that federal action, that separate federal action, there were sort of two sets of claims. First were the claims that he initially brought in tribal court in October or thereabouts, 2007, where he was challenging his eviction. And then later he argued to the federal court that the tribal court proceedings were unfair. And the district court said, well, those are additional claims that you could bring in a subsequent action in the tribal community court, but you've not yet brought. And those were the tribal court claims that the district court felt had not been exhausted. That's correct, Your Honor. So basically new causes of action against the tribe. Right. Anything else? I understand your argument regarding mandatory and discretionary duties. Where is that in the district court decision? The district court decision focuses on the lack of support in federal law for Mr. Graven. All it says is this action is painfully frivolous and, therefore, insufficient to bring into play subject matter jurisdiction. How can that be? And that... Seriously, I just don't understand that, how you can say we lack subject matter jurisdiction because the case has no merit. Well, the district... Explain that to me. Sure. The district court was invoking the substantiality doctrine, which provides that if a claim is so clearly without merit, without support, then it's not sufficient to even raise a federal question. And that analysis... And so where is the substantiality doctrine cited there? It just said it's frivolous, therefore, there's no jurisdiction. Well, the... You know, I have to say, we hear in our screening cases a lot of frivolous cases, and we don't dismiss them for lack of jurisdiction. We dismiss them on the merits. So... Well, I believe he was referring to the government's brief below, which did invoke that doctrine and which does overlap with the mandamus issues that the Ninth Circuit directed us to brief in these replacement briefs. In particular, with the first prong, the clear and certain claim for relief, which really requires that there to be federal law support for Mr. Graven's claim. And if he cannot meet the various prongs of mandamus that he has to meet, there can be no jurisdiction. No, that's not a merits decision, is it? I mean, we deal a lot with this question of mandatory discretionary. And if every time we dismissed a... We refused to grant mandamus or affirmed a denial of mandamus because of the discretionary doctrine, we'd be wiping... And so that was lack of subject matter jurisdiction, we'd be wiping out a whole area of law. I just don't see this as a difference from a case where someone is legitimately fighting about whether it's a discretionary or mandatory duty. I... Your Honor, I think there's an overlap between the question of subject matter jurisdiction and the question of whether there is a basis for mandamus relief. And I think the Supreme Court, in the Heckler case that we've cited, addresses that, where the case is dismissed for lack of subject matter jurisdiction because... Because you go through the steps of mandamus. You talk about when you can get mandamus against the government. I understand that. But this is not dismissed for that. It's dismissed because it's frivolous. And based on... Not based on federal law that supports the claim. In the claim below, Mr. Graven wanted an order compelling these federal officials to meet with him, to negotiate a settlement with him, to make payment to him, and then to seek indemnification from the tribe. But Section 229 clearly does not authorize... But doesn't that just mean that he wouldn't prevail? Yeah. Why is it 12B1 as opposed to 12B6? I think that's what Judge Thomas is... If it's not what Judge Thomas is asking, it's what I'm asking. I think it's the same thing. And you just, I think, are repeating why you think his claim doesn't succeed. That's different. Well, again, respectfully, under the mandamus analysis, I think the jurisdictional issue merges with this analysis. So that it should properly be a 12B1, you think? Yeah. Yes, Your Honor. Let's just say hypothetically that we don't agree with you about the jurisdictional point. But arguendo, let's say we agreed with you about the 12B6 aspect of the mandamus and so on. What can we do, since the district court decided, as it did, it didn't really go into the merits? Would we have to send it back for reconsideration? Or can we decide on any ground, and by looking ourselves at the mandamus issue, if we agreed with you on that, decided on that basis? I think that's right, Your Honor. The district court can be affirmed for any basis supported by the record. And the record contains ample basis for affirmance. On the matter of exhaustion alone, Mr. Graven's complaint on its face shows that he was simultaneously pursuing relief before the Indian Board of Appeals, the Interior Board of Indian Appeals. That alone disqualifies him for mandamus relief. Well, that's the very relief he's seeking, is it not? At least as I understand it. Because on SCR 243, apparently he acknowledged that he had made application to the nation or tribe on his behalf, meaning that the BIA are not right? Maybe it was Mr. Echo Hawk. I don't know. But anyway, an agent of the executive made application for him. Is that correct? That's correct. So if that's done, then to some degree 229 may arguably have been satisfied just by that. And that goes to our maintenance argument as well, which can be raised at any time. And as we argued in the brief, we believe his claim was moot ab initio and is certainly moot today. Any further questions? Thank you. Thank you, Your Honors.  Thank you, Your Honor. Just a final point I would like to make is to Your Honor's point where we're in a 12 v. 6 realm and can we send it back and can we affirm because we're looking at a record. We're not looking at a record that was before the district court judge. We're getting requests for judicial notes. We're talking about all this collateral stuff that never was before the district court judge. It was subject matter jurisdiction that got this case out. Now, like I point out in my opposition to the request for judicial notes, now we're changing into a summary judgment proceeding on appeal. Well, it looks to me, though, the record is fairly clear. There are no disputed facts, are there? There's a disputed fact as to the exhaustion. Well, disputed conclusion. The underlying facts on exhaustion are before us. It's a question of law whether that constitutes adequate exhaustion or not. True? To which particular point on the exhaustion? The question of exhaustion itself is a legal question. Are there any facts that aren't in the record that pertain to exhaustion? No. As I pointed out, we have the Echo Hawk exhaustion. The facts are pretty well stipulated, too, by both parties. The question is one of law, isn't it? I don't think the facts are stipulated by both parties. They're saying that he made application and it was rejected, and he's saying in November 2009 was when I made application and nobody did anything. But I thought maybe it was the other counsel that said it. I thought you said that there was a regional representative of the department or the BIA that contacted the tribe at his request. Isn't that correct? Well, Your Honor, if that was the circumstance, there hadn't been a property taken, if I understand correctly. They're getting involved. There's notices of eviction. We're trying to listen to the other factors. Did a representative of the BIA contact the tribe on your client's behalf to inquire about what had happened in the eviction to ask them to take no further action? I think they did, and they still took action. Okay, but they did make the contact. Before he was physically taken from the property. I understand that. But, I mean, isn't that what 229 contemplates in the first place? Well, I think we can sit there and, yes, it contemplates something like that, but I think we have to understand exactly the context of what the BIA. I don't think those details are in the record other than the contact. Why was the BIA involved? I think 229 says a request has to be made, an official request. And is it your position that that request was not made on behalf of your client? I don't know. Before November 2009, I'm going strictly on the pleadings because we're in a 12B1 scenario and what he says in the pleadings. So, counsel, what's pending now other than this case? I believe there are still a couple of appeals going on on the ones referred to. He had a couple of appeals against Mr. Boyker, I believe, and I'm speaking, I don't know exactly this is what I think is going on, and I spoke with my client, a Boyker who's a lower level than Echo Hawk. There's lower level IBI appeals still pending, I believe. And the thrust of those appeals is to get back the property? The thrust of those appeals is to take action. Under this, okay. And do you have any damage suits pending? No, sir. Okay. Any further questions? All right. Thank you. Thank you, Your Honor. Thank you both for your arguments. The case is here to be submitted for decision.
judges: Thomas, Smith, Christen